UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKIMA C. APPLING,

                              Plaintiff,

        -v-                                                    CIVIL ACTION NO.: 21 Civ. 5091 (SLC)

COMMISSIONER OF SOCIAL SECURITY,                               **OPINION & ORDER**

                              Defendant.

**SARAH L. CAVE**, United States Magistrate Judge.

## I.   INTRODUCTION

Plaintiff Shakima C. Appling ("Ms. Appling") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Act.  (ECF No. 1 ¶¶ 1, 8, 11).  Ms. Appling contends that the decision of the Administrative Law Judge dated February 19, 2021 was erroneous, not supported by substantial evidence and contrary to law, and asks the Court to (a) reverse the Commissioner's decision for the calculation and award of benefits, or (b) remand for a new hearing to reconsider the evidence.  (Id. ¶¶ 8, 12–13; see id. at 3 ¶ c).

Ms. Appling moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF No. 16 ("Ms. Appling's Motion")).  On July 11, 2022, the Commissioner moved to remand this matter for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  (ECF No. 25 (the "Commissioner's Motion")).  Ms. Appling does not oppose

1

remand, but argues that remand should be for a calculation of benefits only.  (ECF No. 27 (the "Reply")).  For the reasons set forth below, the Commissioner's Motion is GRANTED, Ms. Appling's Motion is DENIED AS MOOT, and this matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND

### A.   Factual Background

Ms. Appling was born in 1981 and was 35 years old at the time of the alleged onset date, January 28, 2017.  (R. 31, 91, 637).  She completed a general equivalency diploma ("GED") and had no vocational training.  (R. 97, 638, 692).  She worked until 2016 in a variety of positions, including food server, retail worker, hair stylist, babysitter, messenger, and sales associate.  (R. 692, 900).  Ms. Appling stated that she became unable to work as of October 9, 2016, due to "bi-polar 1 [disorder], social anxiety, massive depression, thyro[i]dism, asthma, respiratory issues, arthritis, water reten[t]ion[, and] sleep apnea."  (R. 899; see R. 695–705, 711–19).

### B.   Administrative Proceedings

#### 1.   The Application

On June 28, 2017, Ms. Appling filed an application for SSI and DIB,[1] alleging a disability onset date of January 28, 2017.  (R. 90, 207–17 (the "Application")).  After the Application was denied, Ms. Appling requested a hearing before an administrative law judge ("ALJ").  (R. 105–15).  On May 7, 2019, ALJ Hortensia Haaversen held a hearing (the "First Hearing"), at which Ms.

---

[1] To qualify for DIB, one must be both disabled and insured for benefits.  42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.120, 404.315(a).  The last date a person meets the insurance requirement is the date by which the claimant must establish a disability.  Ms. Appling met the insurance requirements through March 31, 2017 (R. 24), and thus her disability must have begun on or before that date to qualify for DIB.

Appling, represented by counsel, testified.  (R. 66–89).  Bassey Duke, an impartial vocational

expert ("VE"), also appeared at the First Hearing.  (R. 66, 84–88).

### 2. The First ALJ Decision

On July 31, 2019, ALJ Haaversen issued a decision denying Ms. Appling's applications for

SSI and DIB.  (R. 22–33 (the "First ALJ Decision")).  At steps one and two of the five-step disability

process, the ALJ found that Ms. Appling had not engaged in substantial gainful employment since

January 28, 2017, the alleged onset date, and that her depression, asthma, and obesity were

severe impairments as defined under the Act.  (R. 24).

At step three, the ALJ found that Ms. Appling did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926) (the

"Listings").  (R. 25–27).  The ALJ then found that Ms. Appling had the residual functional capacity

("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the

additional limitations that Ms. Appling:  (i) "should avoid concentrated exposure to dust, fumes,

chemical irritants and poor ventilation"; (ii) "is able to understand, carry out and remember

instructions and sustain attention"; (iii) "is able to follow supervision, relate appropriately with

others and respond appropriately to changes in the workplace"; (iv) "is limited to simple and

routine tasks"; and (v) "is limited to working with individuals in small numbers and is able to have

contact with coworkers, supervisors and the public, but with only occasional interaction with

coworkers and the public and no limitations with her supervisors."  (R. 27).  At step four, the ALJ

found that Ms. Appling was unable to perform her past relevant work as a hair stylist, but, at step

five, considering her age at the time of filing the Application (35), high school education, ability

to communicate in English, and RFC, that "there are jobs that exist in significant numbers in the national economy that [she] can perform[.]"  (R. 31).  Based on the VE's testimony, the ALJ concluded that these jobs included price marker (Dictionary of Occupational Titles ("DOT") code 209.587-034, of which there are over 100,000 jobs nationally), packager (DOT code 222.687-022, of which there are over 41,000 jobs nationally), and photocopy machine operator (DOT code 207.685-014, of which there are over 15,000 jobs nationally).  (R. 31–32).

Accordingly, the ALJ found that Ms. Appling had not been disabled since January 28, 2017 and was not entitled to SSI and DIB benefits.  (R. 32–33).  On September 13, 2019, the Appeals Council denied Ms. Appling's request for review, making the First ALJ Decision the final decision of the Commissioner.  (R. 1–3).

Ms. Appling filed an action in this Court challenging the First ALJ Decision.  Appling v. Saul, No. 19 Civ. 10145 (AT) (BCM), ECF No. 1 ¶¶ 1–13 (S.D.N.Y. Oct. 31, 2019) ("Appling I").  By stipulation of the parties, the First ALJ Decision was reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, "including further evaluation of Dr. Lewandowski's medical opinion and [Ms. Appling's] [RFC]."  Appling I, ECF No. 18 at 1 (S.D.N.Y. June 18, 2020).

### 3.  The Second ALJ Decision

Following remand, on January 15, 2021, ALJ Mark Solomon held a telephonic hearing (the "Second Hearing"), at which Ms. Appling appeared with her counsel.  (R. 624, 639).  Francesco Fazzolari, an impartial vocational expert, also participated in the Second Hearing.  (R. 624).  On February 19, 2021, ALJ Solomon issued a decision denying Ms. Appling's applications for SSI and DIB.  (R. 624–39 (the "Second ALJ Decision")).  ALJ Solomon noted that he had complied with the

Appeals Council's directives on remand to give further consideration to the medical source opinion from Jacqueline Lewandowski, M.D. ("Dr. Lewandowski"), give further consideration to Ms. Appling's RFC, and consolidate her claims, associate the evidence, and issue a new decision. (R. 624–25).

### a.    Steps One and Two

At steps one and two of the five-step disability process, the ALJ found that Ms. Appling had not engaged in substantial gainful activity since January 28, 2017, the alleged onset date, and that her depressive disorder, bipolar disorder, personality disorder, and asthma were severe impairments as defined under the Act.  (R. 627).

### b.    Step Three

At step three, the ALJ found that Ms. Appling did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (R. 628).  The ALJ then found that Ms. Appling had the RFC to perform a full range of work at all exertional levels with the additional "nonexertional limitations" that Ms. Appling:  (i) "avoid concentrated exposure to respiratory irritants"; (ii) "avoid working at unprotected heights, or with hazardous heavy duty moving machinery"; (iii) "can remember, understand, and carry out instructions necessary to perform all specific vocational preparational rating one and two occupations, up to reasoning level three";[2] (iv) "can adapt to routine changes in the work pace, make simple work-

---

[2] "The DOT sets forth a General Education Development Scale ('GED Scale'), which describes the level of education, both formal and informal, required for satisfactory performance in different jobs."  Martinez v. Comm'r of Soc. Sec., No. 15 Civ. 3649 (RRM), 2017 WL 1155778, at *17 (E.D.N.Y. Mar. 27, 2017).  "The GED Scale breaks down the level of education into three categories:   reasoning development, mathematical development, and language development."  Id.; see Haiss v. Berryhill, No. 17 Civ. 8083 (VB) (LMS), 2019 WL 3738624, at *11 (S.D.N.Y. May 15, 2019) (quoting Martinez, 2017 WL 1155778, at *17), adopted by, 2019 WL 5690712 (S.D.N.Y. Nov. 4, 2019).  As is relevant to the ALJ's RFC determination for

related decisions, and maintain attention and concentration for two-hour segments"; and (v) "can respond appropriately to supervision, have routine daily contact with supervisors, can have occasional close interpersonal contact with coworkers, and no close interpersonal face-to-face contact with the general public."  (R. 630).

In assessing Ms. Appling's RFC, the ALJ considered the opinions of several medical providers.  First, the ALJ considered the opinion of Ms. Appling's primary care physician, Michael Correa, M.D. ("Dr. Correa") that she had "severe and uncontrolled asthma, difficulty concentrating, and extreme fatigue[.]"  (R. 634 (citing R. 322–429)).  The ALJ found this opinion "not supported and [] not persuasive" because Dr. Correa's treatment records showed "mild asthma, minimal fatigue, and no mental status examinations whatsoever[.]"  (R. 634).  The ALJ also considered Dr. Correa's functional assessment that Ms. Appling "is able to sit, stand or walk for one hour within an eight-hour workday[,]" "requires an unscheduled work break every 15 minutes during a normal workday[,]" "can never lift anything less than 10 pounds or balance, stoop, kneel or crouch[,]" "can use her hands, fingers or arms only 15 to 20 percent of the time[,]" and "would be absent more than four times a month[.]"  (R. 634 (citing R. 461–82)).  The ALJ found this assessment "not persuasive," "exaggerated," and "not consistent with [her] lack of significant clinical examination findings documenting gait, motor strength, sensation, reflex or

---

Ms. Appling, GED reasoning levels one and two require an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  See OALJ Law Library, Dictionary of Occupational Titles, Appendix C (4th Ed., Rev. 1991), available at, http://www.oalj.dol. gov/PUBLIC/DOT/REFERENCES/DOTAPPC (last visited Aug. 22, 2022).  Level three requires an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form."  Id.

range of motion deficits[,]" and "inconsistent with [her] generally routine and conservative treatment[.]"  (R. 634–35).

Second, the ALJ considered the opinion of SSA consultative examiner Dr. Broska that Ms. Appling was "unlimited in handling simple instructions, using reason and judgment for work-related decisions, sustaining an ordinary routine and attendance, maintaining personal care, or being aware of hazards[,]" was mildly limited "in handling complex work, interacting adequately, and sustaining a consistent pace," and was mildly to moderately limited "in emotional regulation and maintaining well-being."  (R. 634 (citing R. 442–46)).  The ALJ found Dr. Broska's opinion partially persuasive because the "examination was largely benign" and in the RFC, he limited her "to low contact work and only simple decision making" given the opinion that Ms. Appling had "more significant limits in socialization and adaptation or self management[.]"  (R. 634).

Third, the ALJ considered the opinion of state agency psychology consultants K. Gawley, Ph.D. that Ms. Appling had "mild limits in understanding, remembering, and applying information, interacting with others, and concentrating, persisting, or maintaining pace, and no limits in adaptation or self management[,]" and J. Weitzen, Ph.D. and M. D'Ortona, Psy.D that she had "globally mild limits[.]"  (R. 634 (citing R. 98–104, 731–39, 740–50)).  The ALJ found the opinions of Drs. Gawley, Weitzen, and D'Ortona "not persuasive" because they were not "correlated to an [sic] [RFC] and [] all lack support from the record, which shows moderate rather than mild limits in social functioning and adaptation or self management."  (R. 634).

Fourth, the ALJ considered Dr. Lewandowski's opinion "on a check-box form" that Ms. Appling had:  (i) no limits in understanding and memory, carrying out simple instructions, making simple decisions, or using public transit; (ii) mild limits in carrying out detailed instructions,

maintaining an ordinary routine, taking hazard precautions, and setting realistic goals; (iii) moderate limits in attending and concentrating for extended periods, performing within a schedule, working in coordination with others, dealing with the general public, requesting assistance, and maintaining socially appropriate behavior; and (iv) marked limits in accepting instructions, responding appropriately to supervisory criticism, and getting along with others without distracting them or exhibiting behavioral extremes.  (R. 635 (citing R. 453–55)).  The ALJ found Dr. Lewandowski's opinion "not fully persuasive, particularly the marked limits[,]" which he found were "unsupported[.]"  (R. 635).

Fifth, the ALJ considered the opinion of consultative internal medicine examiner Allen Meisel, M.D. ("Dr. Meisel") that Ms. Appling "should avoid exposure to smoke, dust, and other respiratory inhalants, but did not assign other limits."  (R. 635 (citing R. 990–96)).  The ALJ found Dr. Meisel's opinion "well supported by the examination and underlying medical record" and therefore "fully persuasive."  (R. 635).

Sixth, the ALJ considered the opinion of SSA consultative examiner Jody Popple, Ph.D. ("Dr. Popple") that Ms. Appling had:  (i) no limits in performance of simple instructions, self care, or hazard awareness; (ii) mild limits in handling complex work, and sustaining pace and routine; and (iii) moderate limits in social interaction, and use of reason and judgment in work-related decisions.  (R. 635–36 (citing R. 997–1004)).  The ALJ found Dr. Popple's opinion partially persuasive because the "use of 'mild' and 'moderate' terminology is vague, and the treatment records do not support the aggression and frustration intolerance [Ms. Appling] endorsed at this examination[.]"  (R. 636).  The ALJ noted, however, that Dr. Popple's mental status examination

and the record showed that Ms. Appling "could perform simple work with only routine contact with supervisors, and low contact with coworkers and the general public." (R. 636).

Seventh, the ALJ considered the functional assessment that Joe Baez, M.D. ("Dr. Baez"), Ms. Appling's psychiatric provider starting in July 2019, completed in January 2021 in which he stated that her symptoms related back to January 2017. (R. 636 (citing R. 1195–1202)). The ALJ deemed that finding not persuasive because Ms. Appling's attorney, not Dr. Baez, appeared to have typed in the date, and Dr. Baez did not appear to have reviewed earlier records or have knowledge of her status before he began treating her in July 2019. (R. 636). The ALJ also noted Dr. Baez's opinions that Ms. Appling had: (i) no marked limitations; (ii) moderate to marked limitations in extended concentration and attention, performing on a schedule, interacting appropriately with the public, accepting criticism, and getting along with coworkers; and (iii) moderate limitations in understanding, remembering, and applying information, concentrating, persisting, or maintaining pace, interacting with others, and adaptation or self-management. (R. 636). The ALJ found these assessments "not generally persuasive, particularly the moderate to marked limits" and "the moderate limits" given the treatment records showing "mood impairments but no cognitive issues," her "consistent[] cooperat[ion]," "reduced symptoms" when she complied with her medications, and lack of "risk for violence or aggression." (R. 636). The ALJ noted that Dr. Baez's assessment was "somewhat consistent with Dr. Lewandowski's opinion," but they both "share[d] outsized functional limits when compared to their largely benign underlying mental status examinations, which are also consistent across providers." (R. 636).

### c.   Steps Four and Five

At step four, the ALJ found that Ms. Appling was unable to perform her past relevant work as a hair stylist, but at step five, considering her age at the onset date (36), high school education, work experience, and RFC, found that "there are jobs that exist in significant numbers in the national economy that [she] can perform[.]"  (R. 638).  Based on the VE's testimony at the Second Hearing, the ALJ concluded that these jobs included hand packager (DOT code 920.587-018, of which there are 77,000 jobs nationally), labeler (DOT code 920.687-126, of which there are 10,000 jobs nationally), and inspector (DOT code 669.687-014, of which there are 20,000 jobs nationally).  (R. 638).  Accordingly, the ALJ found that Ms. Appling had not been disabled since January 28, 2017 and was not entitled to SSI and DIB benefits.  (R. 639).

On April 26, 2021, the Appeals Council denied Ms. Appling's request for review, making the Second ALJ Decision the final decision of the Commissioner.  (R. 614–17).

### C.   Procedural History

On June 9, 2021, Ms. Appling filed a complaint challenging the Second ALJ Decision.  (ECF No. 1).  On February 21, 2022, the parties consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 15).  On April 1, 2022, Ms. Appling filed her Motion, and on July 11, 2022, the Commissioner filed her Motion, seeking remand.  (ECF Nos. 16; 25).  On July 25, 2022, Ms. Appling filed her Reply, asking the Court to remand for calculation of benefits, rather than for further proceedings before the ALJ.  (ECF No. 27).

### III.   DISCUSSION

**A.  Applicable Legal Standards**

**1.  Standard of Review**

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law.  See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  See Calvello, 2008 WL 4452359, at *8.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted).  The substantial evidence

test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).   The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009). To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. §§ 404.1512(b), 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's [RFC]."  Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  20 C.F.R. §§ 404.1520(b), 416.920b.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.  Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. See Pratts, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

### 2.   Standards for benefit eligibility

For purposes of SSI and DIB benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 1382c(3)(B).  In reviewing a claim of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnosis or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to

by claimant and other witnesses; and (4) the claimant's background, age, and experience."

Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v) and 20 C.F.R. § 416.920(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.   If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the [RFC] to perform his past work.  Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).  In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3.  **Assessing claimant's subjective allegations**

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine whether the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms[.]" 20 C.F.R. §§ 404.1529(c), 416.929(c).  If such an impairment is found, the ALJ must next evaluate the "intensity and persistence of [the] symptoms [to] determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.  See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010). "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)." Id. "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)]." Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)).  If the ALJ does not follow these steps, remand is appropriate.  Sanchez, 2010 WL 101501, at *14–15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in

determining the credibility of the claimant's symptoms and their limiting effects.  See Meadors, 370 F. App'x at 183–84; Briggs v. Saul, No. 19 Civ. 9776 (SLC), 2021 WL 796032, at *13 (S.D.N.Y. Feb. 26, 2021); Toomey v. Saul, No. 18 Civ. 1165 (MJR), 2020 WL 2537291, at *5 (W.D.N.Y. May 19, 2020); Hernandez v. Saul, No. 18 Civ. 832 (JMA), 2019 WL 4805211, at *3 (E.D.N.Y. Sept. 30, 2019).  These seven factors include:  (1) an individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See Bush, 94 F.3d at 46 n.4.

### B.  Application

#### 1.  Evaluation of the ALJ's Decision

The Commissioner concedes that, when assessing Ms. Solomon's RFC, ALJ Solomon "did not evaluate the medical opinions in the record consistent with the Commissioner's regulations." (ECF No. 26 at 8).  Under the post-2017 regulations set forth above (see, § III.A.1, supra), the ALJ was required to, but did not, consider the consistency of the medical source opinions.  (Id. (citing 20 C.F.R. § 404.1520c(b)(2)).  The Commissioner asserts that the ALJ found each of the medical providers' opinions partially or not persuasive, and thus found "no opinion persuasive[,]" and in doing so, found "only that the opinions are not supported by examination findings, or lack

thereof, and thus, not persuasive."  (ECF No. 26 at 8 (quoting R. 629, 634–35)).[3]  As the Commissioner correctly points out, however, "all medical source opinions consistently included limitations in the ability to maintain concentration, persistence, and pace." (ECF No. 26 at 9).  For example, Dr. Baez, who treated Ms. Appling for almost two years, found that Ms. Appling had moderate to marked limitations in maintaining attention and concentration for extended periods, performing activities within a schedule and consistently being punctual, interacting appropriately with the public, accepting instructions and responding appropriately to criticism from superiors, and getting along with coworkers or peers without distracting them.  (R. 1201–02).  Similarly, Dr. Lewandowski, who also treated Ms. Appling, found that she had marked limitations in the ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 453–55).  Dr. Correa, who treated Ms. Appling in 2016 to 2018, also opined that she had difficulty concentrating and that her symptoms would "frequently" interfere with her ability to pay attention, concentrate, and complete tasks.  (R. 387, 397, 428, 479).  Dr. Popple and Dr. Broska also opined that Ms. Appling had limitations in her ability to concentrate, perform a task at a consistent pace, and sustain an ordinary routine at a consistent pace, albeit at a mild, rather than a moderate or marked level.  (R. 444, 1000–01).  In addition, each of the state agency psychological consultants assessed mild limitations in her ability to maintain concentration, persistence, and pace.  (R. 102, 737, 747).

---

[3] As noted above, the ALJ found Dr. Meisel's opinion as to limitations relating to Ms. Appling's asthma fully persuasive.  (R. 635; see § II.B.3.b, supra).  The Court therefore infers that the Commissioner is referring to the medical opinions concerning Ms. Appling's mental limitations.

As the Commissioner correctly points out, "[n]o medical opinion evidence supports the view that [Ms. Appling] was able to maintain concentration, persistence, and pace, sufficient to perform work activity." (ECF No. 26 at 10). Because the record contains consistent opinions as to Ms. Appling's limitations in concentrating and maintaining pace, the ALJ should have explained why he rejected this limitation, with citations to record evidence. See, e.g., Clarke v. Berryhill, 697 F. App'x 49, 51 (2d Cir. 2017) (explaining that "'crucial factors in any determination must be set forth with sufficient specificity to enable [a court] to decide whether the determination is supported by substantial evidence'") (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)); Douglas v. Astrue, 496 F. App'x 154, 157 (2d Cir. 2012) (finding that ALJ failed to set forth "crucial factors" in RFC determination with sufficient specificity). Despite this requirement, the ALJ's discussion of each medical opinion and evaluation of their persuasiveness did not explain his decision not to include any limitation in Ms. Appling's functional ability to concentrate and maintain pace. (R. 634–36). This deficiency is particularly apparent given that the ALJ included his reasoning as to other functional abilities, such as his limiting Ms. Appling to "occasional contact with coworkers, and no close interpersonal contact with the public[,]" and to "simple work with routine changes and simple decisions." (R. 636–37). Accordingly, the ALJ's RFC determination is not supported by substantial evidence.

In addition, the Court agrees with the Commissioner that the ALJ improperly evaluated Dr. Correa's opinions. First, the ALJ failed to consider Dr. Correa's November 20, 2018 opinion that Ms. Appling's symptoms would "frequently" interfere with her attention and concentration. (R. 478–80, 634–35). The Commissioner's regulations, however, required the ALJ to consider "all of the medical opinions" in the record. 20 C.F.R. § 1520c(b). Second, the ALJ did not consider

whether Dr. Correa's assessment of her limited attention and concentration was consistent with other evidence in the record.  See 20 C.F.R. § 404.1520c(b)(2).  Third, and similarly, the ALJ failed to evaluate Dr. Correa's assessment that Ms. Appling had difficulty standing, which was supported by other treatment records.  (R. 428, 360–61, 366, 374–75, 377, 380).  Fourth, Dr. Correa's treatment records show a worsening of Ms. Appling's asthma, including increased wheezing and shortness of breath (R. 353, 361–63, 367), which contradict the ALJ's finding that her asthma was "mild."  (R. 634).  Fifth, the ALJ did not refer to Dr. Correa's diagnoses and treatment of Ms. Appling for depression, anxiety, and dysthymic disorder in 2016 and 2017.  (R. 353–54, 361, 363, 366, 369, 377, 381).  Although Dr. Correa did not expressly perform a mental status examination in treating Ms. Appling in 2016 and 2017, his treatment notes regularly reference her limitations in concentration, persistence, pace, which are all symptoms of the mental impairments for which Dr. Correa treated her, including with medication, over an extended period.  (R. 353–54, 361–63, 381).  Finally, the record supports Dr. Correa's assessment that Ms. Appling had excessive fatigue due to iron deficiency anemia, a diagnosis corroborated by blood testing.  (R. 334, 336, 345, 347, 356, 358).  Due to the ALJ's failure to consider, in accordance with the Commissioner's regulations, each of Dr. Correa's opinions that are supported by and consistent with the record evidence, the ALJ erred and his decision is not supported by substantial evidence.

### 2.   Remand for Further Proceedings is the Appropriate Remedy

The Commissioner argues that remand for further proceedings is the appropriate remedy because the current record "does not compel a conclusion that [Ms. Appling] is disabled."  (ECF No. 26 at 14).  Ms. Appling, on the other hand, argues that remand for a calculation of benefits

"is particularly warranted in this case given that Ms. Appling's claim has been pending more than 5 years[,]" and remand for further proceedings "would result in fruitless substantial, additional delay."  (ECF No. 27 at 8).

The Court agrees with the Commissioner that remand for further proceedings—and not solely for a calculation of benefits—is the appropriate remedy.  "Remand for additional proceedings has been held to be appropriate 'when there are gaps in the administrative record or the ALJ has applied an improper legal standard.'"  Ben v. Berryhill, No. 17 Civ. 8345 (DCF), 2019 WL 1447892, at *4 (S.D.N.Y. Mar. 19, 2019) (quoting Rivera v. Barnhart, 423 F. Supp. 2d 271, 277 (S.D.N.Y. 2006)).  "Alternatively, the Court may remand solely for the calculation of benefits, but this is an 'extraordinary action and is proper only when further development of the record would serve no purpose.'"  Ben, 2019 WL 1447892, at *4 (quoting Rivera v. Barnhart, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005)).  "The mere fact that a remand for additional proceedings will delay the ultimate resolution of a plaintiff's claim is not a proper basis for remand solely for the calculation of benefits."  Ben, 2019 WL 1447892, at *4 (citing Bush, 94 F.3d at 46 (finding ten-year delay did not justify remand solely for calculation of benefits because "delay alone is an insufficient basis on which to remand for benefits")).

Here, as the Commissioner has conceded, the ALJ did not correctly apply the post-2017 regulations to his evaluation of the medical opinions and corresponding assessment of Ms. Appling's RFC, and remand for further proceedings is necessary to permit the ALJ to afford appropriate consideration and weight to the opinions of Dr. Correa and the other medical providers in the record.  See Nieves v. Comm'r of Soc. Sec., No. 20 Civ. 8873 (SLC), 2022 WL 951107, at *9–10 (S.D.N.Y. Mar. 30, 2022) (remanding for further proceedings where ALJ's "brief"

20

discussion of medical opinion did not discuss supportability); Rua-Campusano v. Kijakazi, No. 20

Civ. 7087 (GBD) (SLC), 2021 WL 7287628, at *13 (S.D.N.Y. Dec. 10, 2021) (remanding for further

proceedings where ALJ did not properly apply post-2017 regulations), adopted by, 2022 WL

493390 (S.D.N.Y. Feb. 17, 2022); Dempsey v. Comm'r of Soc. Sec., No. 19 Civ. 1495, 2020 WL

6047344, at *2 (E.D.N.Y. Oct. 13, 2020) (remanding for further proceedings "[b]ecause the ALJ's

error relates to proper application of the regulations").

     While the Court is sympathetic to Ms. Appling's desire for a resolution of her Application,

it cannot conclude on the Record before it that further proceedings would serve no purpose.  The

Court agrees with the Commissioner that while the record contains evidence that Ms. Appling

has several impairments and limitations to her RFC, there is not "persuasive proof of disability,

and further proceedings are necessary so that the ALJ can reevaluate the medical opinions[.]"

Titolo on behalf of See v. Comm'r of Soc. Sec., No. 20 Civ. 3721 (AMD), 2021 WL 5827521, at *6

(E.D.N.Y. Dec. 8, 2021).  (See ECF No. 26 at 14–15).  Indeed, "[i]n a case where, as here, there is

conflicting medical evidence, remand simply for the calculation of benefits is unwarranted."

Newell v. Saul, No. 19 Civ. 10831 (JLC), 2021 WL 608991, at *23 (S.D.N.Y. Feb. 17, 2021)

(alteration and citation omitted) (remanding for fourth ALJ hearing on application that had been

pending for ten years); see Azeez v. Astrue, No. 09 Civ. 3976 (SLT), 2012 WL 959401, at *9

(E.D.N.Y. Mar. 21, 2012) (declining to remand solely for calculation of benefits and, instead,

remanding for fifth ALJ hearing because "the ALJ must properly weigh the treating physicians'

opinions before a clear conclusion can emerge."); Baldwin v. Astrue, No. 07 Civ. 6958 (RJH)

(MHD), 2009 WL 4931363 (S.D.N.Y. Dec. 21, 2009) (remanding for further proceedings rather

than calculation of benefits where there were gaps in administrative record and ALJ applied improper legal standards).

### IV.    **CONCLUSION**

For the reasons set forth above, the Commissioner's Motion is GRANTED, Ms. Appling's Motion is DENIED AS MOOT, and this matter is remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is respectfully directed to close ECF Nos. 16 and 25.

Dated:      New York, New York
            August 23, 2022


_____
SARAH L. CAVE
United States Magistrate Judge